IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


GARDENDANCE, INC.,                    )
                                      )
          Plaintiff,                  )
                                      )
               v.                     )    1:04CV00010
                                      )
WOODSTOCK COPPERWORKS, LTD. and       )
THE ROYAL GARDENS OF CHARLOTTE,       )
INC.,                                 )
                                      )
          Defendants.                 )


MEMORANDUM OPINION


OSTEEN, District Judge


     This matter is before the court on the Order &

Recommendation of United States Magistrate Judge filed on July

11, 2005.  The Magistrate Judge has recommended that various

motions for dismissal, sanctions, and civil contempt be granted,

and that the court dismiss Plaintiff's claims as a sanction.  For

the reasons set forth below, the court will affirm the orders and

accept the recommendations of the Magistrate Judge.

I.   **BACKGROUND**

     A detailed procedural history of this case is necessary to

understand the court's analysis.

     **A.  An overview of the litigation**

     In January 2004, Plaintiff Gardendance, Inc. ("Gardendance")

filed a complaint against Defendants Woodstock Copperworks, Ltd.

("Woodstock") and The Royal Gardens of Charlotte Inc. ("Royal Gardens") for allegedly infringing Gardendance's copyright on a copper tiki torch design. Plaintiff asserted claims of copyright infringement, trade dress infringement, and unfair competition, and sought $3 million in actual damages, $9 million in punitive damages, and attorney's fees and other costs.

When Woodstock answered the complaint, it also asserted counterclaims of patent infringement, tortious interference with contract, and unfair trade practices against Gardendance, its principal shareholders and officers Mark Donley and Lisa Jordy, and its lead counsel Joel Joseph (collectively, "Counterclaim Defendants" or the "Gardendance Parties"). In its counterclaims, Woodstock seeks actual damages, punitive damages, treble damages, attorney's fees, and various declaratory and injunctive relief.

In November 2004, the parties filed a discovery plan that required all discovery to be completed by March 24, 2005. They agreed to attempt mediation with Curtis Emery Von Kann of Washington, D.C., as their mediator. They also agreed that the following parties would be deposed: Mark Donley, Lisa Jordy, Joel Joseph, and Keith "Walgamuth."[1] The deadline for amending pleadings or joining additional parties was to be December 24,

---

[1] Other filings indicate this name is properly spelled "Wolgamuth."

2004, with any later-filed amendments allowed only at the court's discretion.  A trial date was later set for October 2005.

### B. The Amended Complaint and the Motions to Dismiss

On December 27, 2004, three days after the deadline set in the discovery plan, Gardendance moved to join Todd Wolgamuth as a party defendant and file an amended complaint.  The events on which the amendments were based took place in July 2004, but Plaintiff does not indicate when it learned of these actions. (Pl.'s Mot. Leave Join Todd Wolgamuth as Party Def. at 1.) Defendant did not respond to this motion until February 25, when it filed its late brief contending that it had not received a service copy and did not learn of the filing until it checked the docket on its own on February 17.

In considering Gardendance's motion, this court found the original deadline of December 24 to be a holiday, and the December 27 filing to be timely as it was filed on the next day the court was open for business.  (Order of Mar. 29, 2005 at 3.) Despite the difficulties with service of process, Gardendance's motion was allowed but the proposed amendment was not allowed. Plaintiff was given "twenty (20) days from the entry of this order to file a new amendment." (Id. at 4.)  The time was intended to allow Plaintiff to research the amendment, verify that it was appropriate, and then file an amended complaint.  The court also allowed Defendant's response.

3

Gardendance did not file the Amended Complaint until April 19, 2005, 21 days after this court's order was entered and one day late. Defendants Todd Wolgamuth and Woodstock subsequently filed Motions to Dismiss, based first and foremost on the argument that the Amended Complaint was untimely filed. Wolgamuth also argues that service was not perfected on him because he was not served with a summons and complaint.[2]

No response to the motions to dismiss came from Plaintiff Gardendance until June 16, when it requested a two-week extension of time to respond. This motion came 10 days after a response was due and asked for an extension of the deadline to June 23. As grounds for this request, Gardendance contended that lead counsel Mr. Joseph was never served with the Motions to Dismiss, that he had "been involved in multiple litigations requiring extensive travel and extensive time commitments," and that additional counsel had very recently been brought into the case to assist.[3] (Mot. Two-Week Extension Reply Both Woodstock Copperworks' & Todd Wolgamuth's Mots. Dismiss at 3.)

Despite asking for an extension of time to June 23, Gardendance's responses to the motions to dismiss were not filed until June 30. United States Magistrate Judge Wallace W. Dixon

---

[2] Wolgamuth's summons was not sent until June 27.

[3] At this point, no new counsel had made an appearance on behalf of Gardendance or the Gardendance Parties.

4

subsequently denied Gardendance's motion for an extension of time because the request was untimely made. (Order & Recommendation U.S. Magistrate Judge of July 11, 2005 at 5.) Finding that Woodstock and Wolgamuth's motions to dismiss were unopposed and also that the Amended Complaint was, in fact, untimely filed, Magistrate Judge Dixon also recommended that the motions to dismiss be granted. (Id. at 6.) This recommendation remains pending before the court.

### C. Woodstock's Motion to Compel

On February 11, 2005, Woodstock filed a Motion to Compel Discovery Responses From Gardendance, Inc., Mark Donley, Lisa Jordy, and Joel D. Joseph and for Sanctions, asserting that their responses to interrogatories and responses to requests for production of documents (due December 8, 2004) were late. Woodstock represented that it had conferred with lead counsel Mr. Joseph in late December and had agreed to postpone the filing of a motion to compel until January 10. On January 10, Woodstock received some responses from Mr. Joseph by email, but claimed they were incomplete, unresponsive, and unverified. After a few more weeks of discussions between Woodstock's counsel and Mr. Joseph, the issue remained unresolved and Woodstock filed its motion to compel.

Gardendance did not respond to the motion, but on March 2, Mr. Joseph filed a motion for a protective order on behalf of

himself, Donley, and Jordy,[4] seeking to block Woodstock's request
for their income tax records and financial statements, the
information that was the subject of the interrogatories and
document requests that were due to Woodstock in December 2004,
and was the subject of the pending motion to compel.  On that
day, Mr. Joseph also filed a motion to dismiss the counterclaims
against himself, Donley, and Jordy and asked leave of the court
to amend Gardendance's complaint to add a claim under the Lanham
Act.[5]

Magistrate Judge Dixon granted Woodstock's Motion to Compel
and ordered Joseph, Donley, and Jordy to respond to the requests
by March 25, 2005.  (Order of Mar. 8, 2005 at 2-3.)  Magistrate
Judge Dixon found that no objection to Woodstock's requests were
made within the 30-day time limit, nor had any responses been
properly served, and he held that the Gardendance Parties'
failure to timely object constituted a waiver of any objections.
Magistrate Judge Dixon also allowed Woodstock to recover its fees
and expenses as sanctions for the discovery violations.

On March 21, the Gardendance Parties filed two additional
motions.  First they filed a motion to reconsider the March 8

---

[4] Joel Joseph is lead counsel for Gardendance, Donley, and
Jordy, and also represents himself pro se.

[5] The court notes that the March 2, 2005, request for an
amendment to the complaint came months after December 24, 2004,
the date the parties agreed to in their discovery plan as the
deadline for such amendments.

6

order, arguing that the court may have overlooked their pending motions to dismiss the counterclaims and for a protective order. (Pl.'s Mot. Reconsider Order Compelling Pl. & Countercl. Defs. Answer Interrogs. & Reqs. Prod. Docs. at 1.) Second, Gardendance filed its own motion to compel Woodstock to answer all interrogatories and respond to all document requests. (Pl.'s Mot. Compel Answers Interrogs. & Reqs. Prod. Docs. at 1.)

Magistrate Judge Dixon denied all of the Gardendance Parties' motions regarding the March 8 order. The motion for a protective order was denied because it failed to address their waiver of objections. (Order of May 17, 2005 at 2.) Magistrate Judge Dixon also denied the motion to reconsider, essentially because it was redundant with the motion for a protective order. (See id. at 3.) He denied Gardendance's motion to compel, finding that Woodstock appropriately objected to the number of interrogatories and to the form of the requests for production of documents. (Id. at 4.) Finally, Magistrate Judge Dixon allowed $2,064.85 in fees and expenses as a sanction against the Gardendance Parties for the failure to comply with discovery. (Id. at 5.)

Joseph, Donley, and Jordy did not comply with the March 25 deadline set in Magistrate Judge Dixon's March 8 order, and Woodstock eventually filed a Motion for Civil Contempt for this failure. The contempt motion is unopposed. Magistrate Judge

7

Dixon has recommended that the court grant the motion, but rather than impose contempt as a sanction, has recommended the court dismiss the case. (Order & Recommendation U.S. Magistrate Judge of July 11, 2005 at 9.) This recommendation is pending before the court.

    **D. The Gardendance Parties' First Failure to Appear for Depositions**

Only a week after Magistrate Judge Dixon ordered Donley, Jordy, and Joseph to turn over discovery, Woodstock filed a second motion stemming from the Gardendance Parties' second discovery violations. (Woodstock Copperworks Ltd.'s Mot. Sanctions (filed Mar. 15, 2005) [hereinafter, "Woodstock's 1st Mot. No-Show Sanctions"] at 1.) This time, the motion was in response to the failure of Jordy to attend a February 14 mediation and the failure of the Gardendance Parties to attend depositions noticed for February 15-17. Both the mediation and the depositions were to take place in Greensboro, North Carolina, about an hour's drive from Gardendance, Donley, and Jordy in Hillsborough.[6] The representatives of Woodstock traveled from Kingston, New York, and Hinckley, Ohio, to attend the mediation and depositions.

In its opposition to this motion, Gardendance lashed out at Woodstock and its counsel. Gardendance asserted that Woodstock

---

[6] The court takes judicial notice of the fact that Hillsborough and Greensboro are less than 45 miles apart.

had changed the mediator[7] without Gardendance's consent or knowledge, accused Woodstock of "derail[ing]" the mediation by failing to have its insurer present and refusing to proceed without Jordy, accused Woodstock of "fail[ing] to make any effort to work out a reasonable deposition schedule," and faulted Woodstock's counsel for originally noticing the depositions for the office of Gardendance's local counsel in Greensboro without getting that attorney's prior approval. (Opp'n Mot. Sanctions at 1-2.) In concluding his opposition brief, Mr. Joseph made the following statement: "The court must understand that [defense counsel's] subterfuge, and their blowing smoke, was only presented to make them look good even though they were the source of the fire." (Id. at 3.) This statement well characterizes the tenor of the entire opposition brief. In addition to opposing Woodstock's motion for sanctions, Gardendance requested sanctions

---

[7] The court's docket shows on December 10, 2004, that the clerk's office received a telephone call from Woodstock's attorney indicating the parties had agreed to work with C. Robert Rhodes as their mediator. On December 30, an order issued from the clerk's office appointing Rhodes as the mediator. The court has found no mention in the record of the Gardendance Parties' objection to this change until they filed their opposition brief on March 23, 2005. No explanation has been requested or was given as to why the change was made or why the Gardendance Parties made no objection to it for several months.

The Magistrate Judge found that both parties were in violation of the rules relating to attendance at mediation and refused to allow sanctions for Jordy's failure to appear. (Order of May 17, 2005 at 2-3.)

against Woodstock and its counsel for vexatiously multiplying the proceedings.[8]

Magistrate Judge Dixon granted Woodstock's Motion for Sanctions resulting from the no-show depositions, and allowed it to submit a bill of costs. (Order of May 17, 2005 at 3.) Woodstock submitted its costs and expenses, and the Gardendance Parties objected to the amount arguing, in part, that no time could reasonably be billed for depositions that did not occur. (Gardendance's, Mark Donley's, Lisa Jordy's & Joel Joseph's Resp. Br. Def. Woodstock Copperworks Ltd.'s Request Sanctions at 2.) They further accused one of Woodstock's attorneys of "padding the amount of time for the sanctions calculation." (Id. at 4.)

Magistrate Judge Dixon considered the arguments of the parties and subsequently allowed sanctions of approximately the full amount requested: $8,909.79. (Order & Recommendation U.S. Magistrate Judge of July 11, 2005 at 5.) Each Gardendance Party was to pay an equal share of this amount directly to Woodstock's attorneys "by the date set for a hearing in Greensboro, July 22, 2005." (Id. at 11.)

On July 18, the week of the July 22 hearing, the Gardendance Parties filed, through Mr. Joseph, objections and a motion for a stay of Magistrate Judge Dixon's July 11 order. Although these

---

[8] The court notes that the request contained in this opposition brief is not a proper motion. Each motion must be "set out in a separate pleading." L.R. 7.3(a).

filings appeared to be addressed to the entire order and recommendation, the only specific objection addressed the sanctions award.[9] (See Statement P&A Supp. Mot. Stay Magistrate's Order Dated July 8, 2005[10] at 3-4.)  The Gardendance Parties requested an oral hearing "because the magistrate apparently did not understand that it was defendants' counsel who caused the alleged 'no show' to occur by not agreeing to the depositions in the first place." (Objections Magistrate's Order Dated July 8, 2005[11] at 1.)  In support of this contention, Mr. Joseph refers the court to his earlier filed affidavit in support of a motion for sanctions,[12] which he claims "verified that counsel for defendants were obstreperous." (Id.)  In addition, Mr. Joseph "incorporates by reference all memoranda already filed, including those supposedly filed late, in support of these

---

[9] The brief in support of the motion to stay discusses only the award of "$9000" in sanctions against the Gardendance Parties.  Magistrate Judge Dixon had already allowed sanctions for their first failure to appear for depositions, and in this July 11 order he awarded a specific dollar amount.  Magistrate Judge Dixon also allowed a second motion for sanctions arising out of the Gardendance Parties' second failure to appear for depositions and invited Woodstock to submit their bill of costs regarding that violation.

[10] The original order was entered on July 8, and a corrected order was entered on July 11.  The court herein will address only the final, corrected version of the order.

[11] See Footnote 10, supra.

[12] See Footnote 8, supra.

11

objections, including the statement of points and authorities in support of the motion for a stay." (<u>Id.</u>)

In his brief supporting the Motion to Stay, Mr. Joseph makes further personal accusations against Woodstock's counsel. He contends that Woodstock's counsel would not agree that each side should have an equal number of depositions and would not agree to the deposition of Woodstock that had already been noticed.[13] (Statement P&A Supp. Mot. Stay Magistrate's Order Dated July 8, 2005 at 4.) He then states, "As a part of Woodstock counsel's trickery and deceit, he and his client nonetheless showed up for a deposition that he told the undersigned counsel that he would not appear at."[14] (<u>Id.</u>) In this brief, the Gardendance Parties argue that Woodstock's refusal to consent to an equal number of depositions for each side, "the most reasonable and balanced approach" given the short time left in discovery, "demonstrates

---

[13] The parties do not dispute that all depositions were properly noticed. The court also points out that in their discovery plan, the parties agreed to a list of specific individuals to depose.

[14] These comments appear to conflate the two motions for sanctions that have been filed by Woodstock concerning the Gardendance Parties' failure to appear for depositions. From the record, it appears Gardendance noticed a deposition of Woodstock for **March** 2005, during a second round of depositions noticed after the Gardendance Parties failed to appear for the first round in February. The sanctions award of $8909.79 was to compensate Woodstock for its costs and expenses related to the first failure to appear. The same order of July 11 also allowed sanctions for the second failure to appear, but did not determine an amount.

that it is Woodstock that abused the discovery process, not Gardendance." (_Id._)

The court denied the motion to stay. (Order of July 21, 2005 at 2.) On July 22, through new counsel, the Gardendance Parties filed further, more detailed objections. Woodstock later filed a motion to enforce the sanctions order against Mr. Joseph, the only party who failed to pay by the July 22 deadline. (Def. Woodstock Copperworks, Ltd.'s Mot. & Br. Enforce Sanction Order Against Joel D. Joseph at 2.)

The July 11 order and recommendation is pending before the court.

### E. The Gardendance Parties' Second Failure to Appear for Depositions

On April 15, 2005, Woodstock filed yet another motion for sanctions resulting from the Gardendance Parties' second failure to appear for depositions. (Woodstock Copperworks, Ltd.'s Mot. Sanctions [hereinafter, "Woodstock's 2d Mot. No-Show Sanctions"] at 2.) Woodstock and its counsel had again traveled to Greensboro for depositions it had noticed for March 21-24 of Donley, Jordy, Joseph, and Gardendance. Woodstock's corporate representative and counsel also appeared for a Rule 30(b)(6) deposition of Woodstock noticed by Gardendance itself and scheduled for March 21 at the office of Gardendance's local counsel Rightsell & Eggleston, also in Greensboro. On arrival at Rightsell & Eggleston's offices, local counsel indicated no

13

knowledge of any depositions scheduled that day. Neither lead
counsel Joseph nor any of the other Gardendance Parties were
present for that deposition. In addition to sanctions, Woodstock
requested that the court issue a warning to the Gardendance
Parties that future discovery abuses will result in dismissal of
their claims.

The Gardendance Parties made no response to this Motion for
Sanctions. On July 11, Magistrate Judge Dixon granted the motion
for sanctions, but did not set any specific amount. (Order &
Recommendation U.S. Magistrate Judge of July 11, 2005 at 2.)

**F. Summary Judgment**

Approximately one month after discovery closed, Woodstock
filed a Motion for Summary Judgment. Three days later, the
Gardendance Parties moved to reopen discovery for an additional
three months, arguing that Woodstock had failed to turn over the
interrogatory answers and documents that were the subject of
Gardendance's March 21 motion to compel.[15] The Gardendance
Parties also argued they had "not had _any_ chance to conduct
discovery" and that requiring them to move forward with the
information they had would be "_per se_ unfair and inequitable."
(Br. Supp. Countercl. Defs.', Gardendance, Inc., Mr. Mark Donley,
Mrs. Lisa Jordy & Mr. Joel Joseph, Mot. Reopen Disc. at 4.)

---

[15] This motion had already been denied by Magistrate Judge
Dixon. (See Order of May 17, 2005 at 4.)

14

Next, Plaintiff moved for a seven-day extension of time to respond and permission to file an over length brief of 20 pages.[16] Plaintiff argued that it needed more time and more space to respond to a large number of complex intellectual property claims, and "more opportunity to assemble additional evidence and exhibits." (Pl's. Mot. Extension Time & Leave File Extended Br. at 2.) Mr. Joseph's motion also states that he contacted Woodstock's counsel on May 25, 2005, the same day he filed his motion, asking for a stipulation, but Mr. Anderson and Mr. Lockett were out of the office, and Mr. Langdon was unable to authorize any stipulation. (Id.) After describing this situation, Mr. Joseph writes that "opposing counsel has been obstructive and excessive in filing pleadings during every stage of the case so much so that the highly combative and uncooperative conduct exhibited up to this point has provided ample evidence as enumerated in the Motion for Sanctions[17] currently before the Court." (Id.) Woodstock objected to the

---

[16] The motion asks the court to "grant Gardendance 20 pages for responding." (Pl.'s Mot. Extension Time & Leave File Extended Br. at 3.) The local rules allow 20 pages for responses to motions, including motions for summary judgment. L.R. 7.3(d).

[17] Presumably, this reference to a motion for sanctions is to the Gardendance Parties' request for sanctions contained in their opposition to Woodstock's 1st Motion for No-Show Sanctions, stemming from the Gardendance Parties' first failure to appear for depositions. (See Opp'n Mot. Sanctions at 3.) This is not a proper request for court action because each motion must be "set out in a separate pleading." L.R. 7.3(a).

request for more time, accusing Gardendance of purposefully delaying the adjudication of the case. (Woodstock Copperworks Ltd.'s Br. Opp'n Pl.'s Mot. Extension Time & Leave File Extended Br. at 2.)

Gardendance filed its response to the summary judgment motion on June 2. (See Resp. Br. Opp'n Def. Woodstock Copperworks Mot. Summ. J. at 1.) Magistrate Judge Dixon subsequently denied the motion to reopen discovery, (Text Order of June 14, 2005), and denied the motion for an extension of time, (Order & Recommendation U.S. Magistrate Judge of July 11, 2005 at 4). The motion for summary judgment is, therefore, unopposed.

## G. The July 22 Hearing Date and the Magistrate Judge's Recommendation of Dismissal

On July 6, 2005, with an October trial date fast approaching and multiple pending motions, the court set a "status conference" for July 22, at 2:00 p.m., in Greensboro. Shortly thereafter, Magistrate Judge Dixon issued his recommendation that the case be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure as a sanction for the Gardendance Parties' repeated violations and failures throughout the litigation. (Id. at 11.)

On Thursday, July 14, the Gardendance Parties filed a Motion for Continuance of the July 22 hearing, asking that it be postponed to some time after August 1. (Mot. Continuance at 1.) In that motion, the Gardendance Parties claimed Mr. Joseph had

16

"previously scheduled federal court hearings in Oakland,
California and Reno, Nevada" and would be out of town from July
21 through July 29 "to attend and participate in these hearings."
(<u>Id.</u>)  Additionally, Donley and Jordy were scheduled to attend a
family wedding during the entire week of July 17 through July 22.
(<u>Id.</u>)

On July 19, the court informed Woodstock's counsel and
Gardendance's local counsel Mr. Eggleston that the hearing would
be addressed exclusively to the issues raised in Magistrate Judge
Dixon's Order and Recommendation of July 11, especially his
recommendation that the case be dismissed as a sanction against
the Gardendance Parties.  The court also requested that Mr.
Joseph[18] send more specific information about the hearings in
California and Nevada later that week, including their places,
dates, times, and descriptions of the matters involved.  The
court informed Mr. Eggleston that it would not require the
presence of Donley and Jordy at the hearing, but would allow
counsel to be heard on that matter.

Later that day, Mr. Joseph faxed to chambers a supplemental
memorandum containing more detail about his upcoming hearings.

---

[18] This request was made of Mr. Eggleston because the only
phone number available to the court to reach Mr. Joseph had been
temporarily disconnected.  The court also had no fax number or
email address to reach Mr. Joseph on short notice.  Mr.
Eggleston's office later provided a working phone number for Mr.
Joseph's office.

In that memorandum, he stated that he had a non-refundable flight reservation leaving the Washington, D.C., area for California on Thursday, July 21. His schedule included a "meeting with local counsel in California on Friday, July 22," and preparation for the Oakland hearing that day and over the weekend. He stated that he had a summary judgment hearing in Oakland, California, at 1:00 p.m., on July 24, 2005,[19] in the case of <u>Smith & Hawken v. Gardendance</u>. He also stated that he had a hearing in Reno, Nevada, at 9:00 a.m., on July 26, in the case of <u>Carpad, Inc. v. Brookstone, Inc.</u> concerning a show cause order, and he would be meeting with his Nevada clients before this hearing.

In this supplemental memorandum to the court, Mr. Joseph lashed out once again at opposing counsel. His memorandum states, in relevant part, "[I]t has become apparent that Woodstock will oppose every motion, no matter how reasonable, will fight every discovery matter, and will not litigate like gentlemen."

Further investigation of the case dockets confirmed that Mr. Joseph had no court conflict on July 22, and that he had specified the wrong dates for the scheduled hearings. In the <u>Carpad</u> matter, which was heard in the District of Nevada (No. CV-N-02-0557), a hearing was scheduled for Thursday, July 28, at

---

[19] July 24, 2005, is a Sunday, a day when federal courts are closed for business.

9:00 a.m.  The docket showed that this hearing had been scheduled on June 9, 2005, and that plaintiffs and their counsel were ordered to show cause why they should not be held in contempt of court for their failure to comply with two prior orders of that court.  The first of these orders (docket number 214) required the plaintiffs to pay $10,629.54 to the defendants in attorneys' fees and costs.  The plaintiffs (represented by Mr. Joseph) were to pay 75% of this amount, and plaintiffs' counsel, Joseph and Associates, was to pay 25% of this amount.  The second order (docket number 223) required plaintiffs to mail a remedial letter to the defendants in accord with other orders of the court, and to file a certification with the clerk that the letter had been sent.

In the Smith & Hawken matter (No. 4:04-CV-01664-SBA), the docket of the U.S. District Court for the Northern District of California showed that a hearing was set for Tuesday, July 26, at 1:00 p.m., on the plaintiff's motion for summary judgment.  This hearing had been scheduled on June 9, 2005.  In this action, Mr. Joseph represented the defendants and counter-claimants Gardendance, Inc. and Mark Donley.

After receiving and verifying the information from Mr. Joseph, the court set a telephone conference for 9:00 a.m., Thursday, July 21, to discuss Mr. Joseph's Motion for Continuance.  Mr. Joseph did not attend to argue his motion.

19

Gardendance was instead represented by new counsel JoAnne M. Denison.

Later that day, the court issued an order denying the Motion for Continuance, but cancelling the July 22 hearing. (Order of July 21, 2005 at 1.) The court opted to consider Magistrate Judge Dixon's July 11 Order and Recommendation on the pleadings and ordered the parties to stand down from trial preparation on Plaintiff's claims until a decision was entered.[20] (Id. at 3.) In addition, the court made further findings about Mr. Joseph's conduct. First, it found Mr. Joseph's personal comments against Woodstock's counsel to be highly objectionable and enough to warrant sanctions on its own. Second, the court found that Mr. Joseph, whether intentionally or not, misled the court regarding the nature of his conflict with the July 22 hearing date and the dates of his previously scheduled hearings. The court's own investigation had revealed no court conflict. Finally, the court found Mr. Joseph's absence from the hearing to discuss his Motion for Continuance to be unjustified.

On Friday, July 22, Gardendance, acting through Ms. Denison, submitted a second round of objections to the July 11 Order and Recommendation, as well as a motion by Gardendance, Donley, and Jordy seeking to terminate Mr. Joseph as their attorney.

---

[20] The October trial date for Defendant's counterclaims, however, still stood.

The court herein considers the July 11 Order and Recommendation.

## II.  DISCUSSION

### A.  Standard of Review

Magistrate judges are authorized to rule on any pretrial matter, except for eight specific matters listed in the enabling statute and generally referred to as "dispositive" matters. Ocelot Oil Co. v. Sparrow Indus., 847 F.2d 1458, 1461-62 (10th Cir. 1988).  Among these exceptions are summary judgment motions, motions to dismiss for failure to state a claim upon which relief can be granted, and the involuntary dismissal of an action.  28 U.S.C. § 636(b)(1)(A).  A magistrate judge may make findings and recommendations on a dispositive matter, but may not issue an order.  See id. § 636(b)(1)(B).

The appropriate standard of review of a magistrate judge's order or recommendation depends on the dispositive or nondispositive nature of the matter.  Review of matters that are "dispositive of a claim or defense of a party" is made de novo. Fed. R. Civ. P. 72(b).  Review of a magistrate judge's nondispositive pretrial rulings is only to determine whether they are "clearly erroneous or contrary to law."  Fed. R. Civ. P. 72(a).  To fall under this more deferential standard, the matter must be "not dispositive of a claim or defense of a party."  Id.

Parties have 10 days after service of the recommended disposition or order within which to file their objections. Fed. R. Civ. P. 72. Objections must be in writing and must be specific. <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2004). A failure to file a specific, written objection to a magistrate judge's order or recommendation waives the right to appellate review. <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997).

**B. Objections**

The Gardendance Parties filed several objections to the Order and Recommendation of United States Magistrate Judge entered on July 11, 2005. Through Mr. Joseph, they filed an objection on July 18, within the 10-day time limit. This document addresses only the order granting sanctions against the Gardendance Parties of $8909.79 for the no-show depositions that occurred in February. A few days later, through Ms. Denison, they timely filed a second set of specific objections to the sanctions awards, the striking of Gardendance's response to the Motion for Summary Judgment, the denial of an extension of time to respond to the Motions to Dismiss, the recommendation of granting the Motions to Dismiss, and the recommendation of dismissal. These filings will be considered together.

22

### 1. Sanctions Awards

The award of sanctions against a party for discovery violations is a nondispositive matter which the district court reviews under the "clearly erroneous or contrary to law" standard. _See, e.g._, _Grimes v. City & County of San Francisco_, 951 F.2d 236, 240 (9th Cir. 1991); _Thomas E. Hoar, Inc. v. Sara Lee Corp._, 900 F.2d 522, 525 (2d Cir. 1990). Under this standard, the court must affirm unless a review of the entire record leaves the court with the "definite and firm conviction that a mistake has been committed." _United States v. United States Gypsum Co._, 333 U.S. 364, 395, 68 S. Ct. 525, 542 (1948).

The court has carefully reviewed the history of this litigation and finds no clear error with either the amount awarded under Woodstock's 1st Motion for No-Show Sanctions or the allowance of sanctions under Woodstock's 2d Motion for No-Show Sanctions. The Gardendance Parties have shown a consistent pattern of not only dilatory action, but of contumacious refusal to cooperate in discovery. Even before the no-show depositions, the Gardendance Parties had unjustifiably refused to turn over information and documents in discovery. After being confronted with their discovery violations, they began making accusations against opposing counsel and attempting to throw blame at the defense by filing their own motion to compel and attempting to request sanctions against Woodstock. Finally, when faced with a

23

motion for summary judgment, the Gardendance Parties asked to reopen discovery because, they believed, it would be unfair to them to go forward with no evidence. They argued, to the court's amazement, that Woodstock had not turned over the information that was the subject of their motion to compel, a motion that had been denied. This type of obstreperous conduct can and should be sanctioned by the courts, or the rules of discovery would have no force at all.

It was within the Magistrate Judge's authority and discretion to award sanctions as he saw fit to ensure future compliance with discovery orders and to compensate Woodstock for the extra time and expense of having to fight these battles. The court finds no clear error and will affirm the July 11 order on these matters.

### 2. Denial of an Extension of Time to File a Response to the Summary Judgment Motion

Magistrate Judge Dixon denied an extension of time to respond to the summary judgment motion. (Order & Recommendation U.S. Magistrate Judge of July 11, 2005 at 5-6.) Under the local rules, an uncontested motion is "ordinarily . . . granted without further notice." L.R. 7.3(k). However, this does not mean that the denial of an opportunity to respond to a dispositive motion is a decision on that dispositive matter, because striking the response does not dispose of any claims or defenses. A district court may not grant a motion for summary judgment merely because

24

it is unopposed. Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993). It must still consider the motion on the merits, determine whether the moving party has met its burden of production, and determine whether any issue of material fact remains. Id. Therefore, this order will be reviewed under the "clearly erroneous or contrary to law" standard.

When a party requests enlargement of time (1) "before the expiration of the period originally prescribed" and (2) "for cause shown," then the court may in its discretion order an enlargement of time. Fed. R. Civ. P. 6(b). Here, Woodstock filed the Motion to Dismiss on April 25, 2005. The certificate of service indicates it was served on Gardendance by U.S. Mail. (Def. Woodstock Copperworks, Ltd.'s Mot. Summ. J. at 3.) Allowing 30 days plus 3 days for service by the mail means the response was due on May 28. See Fed. R. Civ. P. 6(e) and L.R. 7.3(f). That day, however, was a Saturday, so the deadline is extended to the following Monday, May 30. The motion to extend time was timely filed on May 25 and requested an additional week (from May 25) to file the response. The response was then filed on June 2, three days late.

Magistrate Judge Dixon found that the request was not made for good cause. (Order & Recommendation U.S. Magistrate Judge of July 11, 2005 at 4.) As grounds for an enlargement of time, Gardendance gave three reasons: (1) the number of issues to

25

address; (2) more time was needed "to assemble additional evidence and exhibits"; and (3) the complex and fact-intensive nature of the issues, especially the patent and copyright issues. (Pl.'s Mot. Extension Time & Leave File Extended Br. at 2.)    In denying the request, Magistrate Judge Dixon stated there were no patent and copyright issues in the summary judgment motion and reasoned that Gardendance had had six months of discovery to assemble its evidence and exhibits, but failed to do so.  (Id.)

The court sees no clear error with Magistrate Judge Dixon's order denying an extension of time to respond.  There are four questions presented in the Motion for Summary Judgment, a reasonable number of issues to address, especially given that several are related issues.  Second, Gardendance should have had ample time in discovery to assemble evidence to support its claims.  Lastly, while Magistrate Judge Dixon stated in his order that there were no copyright or patent issues raised, it appears that there are, in fact, copyright issues raised in the summary judgment motion.  However, these issues relate to the validity of the copyright, and on a cursory glance do not appear to rise to any extraordinary level of complexity.[21]  The court sees no reason why Gardendance should not have been ready to answer

---

[21] Subsequent to the filing of the motions here, the United States District Court for the Northern District of California held that the same copyright at issue in Woodstock's Motion for Summary Judgment was invalid.  (Notice Judicial Order Declaring Pl.'s Copyright Invalid Ex. 1.)

26

Woodstock's arguments.  The order denying Gardendance an extension of time to respond to the Motion for Summary Judgment will be affirmed.

### 3. Denial of an Extension of Time to Respond to the Motions to Dismiss

As stated above, a decision on a motion for enlargement of time to file a response to a dispositive motion is not a decision on a dispositive matter.  As with summary judgment motions, a court does not grant a motion for dismissal merely because it is uncontested.  Rather, a district court should review a motion to dismiss on its merits to determine whether the pleadings are sufficient.  <u>Issa v. COMP USA</u>, 354 F.3d 1174, 1177 (10th Cir. 2003).  Magistrate Judge Dixon denied Gardendance's request for an extension of time to respond to the motions to dismiss because it was untimely.  (Order & Recommendation U.S. Magistrate Judge of July 11, 2005 at 5-6.)  Because this decision did not dispose of any claims or defenses, it will be reviewed under the "clearly erroneous or contrary to law" standard.

The motions to dismiss were filed on May 12, making responses due on June 6.  Plaintiff, however, did not respond by this date and did not ask for an enlargement of time until June 16.  Further, Gardendance requested to have until June 23 to file responses but did not file until June 30, failing to meet even its own deadline.  Thus, even if Magistrate Judge Dixon had given Gardendance the relief it sought by extending the deadline to

27

June 23, the responses would still have been stricken as untimely.  Considering the multiple filings that had already been ignored or untimely filed by Gardendance and the pattern of dilatory conduct that by this point should have been known to all counsel and principals of Gardendance, the court sees no error with Magistrate Judge Dixon's denial of this motion.

> **4.    Recommendations that the Motions to Dismiss and Motion for Contempt Be Granted and the Complaint Be Dismissed**

This recommendation is subject to de novo review under Rule 72(b) of the Federal Rules of Civil Procedure.  The court has reviewed the proceedings in their entirety and will accept the Magistrate Judge's recommendation that Gardendance's claims be dismissed.

A court has authority to sanction a party with dismissal of an action.  In addition to inherent authority to dismiss, <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 630-31, 82 S. Ct. 1386, 1388-89 (1962), there is statutory authority to dole out this harsh sanction under the Federal Rules of Civil Procedure.  Under Rule 37(b), a court may impose a variety of sanctions for failure to comply with discovery orders, including dismissal.  Fed. R. Civ. P. 37(b).  A court may also assess attorney's fees and costs as a sanction against the litigants, their attorneys, or both. <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 764, 100 S. Ct. 2455, 2463 (1980).  Under Rule 41(b), a court has authority to

dismiss with prejudice for failure to prosecute. <u>Doyle v.</u>
<u>Murray</u>, 938 F.2d 33, 34 (4th Cir. 1991).

Dismissal is a severe sanction generally reserved for
egregious cases "where there is a clear record of delay or
contumacious conduct and where lesser sanctions would not serve
the best interests of justice." <u>Boazman v. Economics Lab., Inc.</u>,
537 F.2d 210, 212 (5th Cir. 1976) (internal citations and
quotations omitted). However, it "must be available to the
district court in appropriate cases, not merely to penalize those
whose conduct may be deemed to warrant such a sanction, but to
deter those who might be tempted to such conduct in the absence
of such a deterrent." <u>National Hockey League v. Metropolitan</u>
<u>Hockey League</u>, 427 U.S. 639, 643, 96 S. Ct. 2778, 2781 (1976).

Dismissal is appropriate where there has been "flagrant bad
faith" or an attorney's "callous disregard" of responsibilities
to the court. <u>Id.</u> In <u>National Hockey League</u>, flagrant bad faith
was evidenced by failing to perform an act after being expressly
ordered to do so by a deadline, and also failing to file any
saving motions until after the deadline passed. Callous
disregard was evidenced by 17 months of failing to turn over
answers to interrogatories after numerous last-minute extensions,
numerous admonitions of the court, and numerous promises to turn
over the information. <u>Id.</u> at 640-41, 96 S. Ct. at 2779-80.

29

A court should be careful not to hold a client responsible for the attorney's failures.  In Doyle v. Murray, for example, the court reversed the dismissal of an action based on the attorney's single failure to appear for a hearing.  938 F.2d 33, 35 (4th Cir. 1991).  The attorney had not shown a pattern of dilatoriness in the case, and the client was incarcerated and less able than others to supervise his attorney's conduct.  Id. Still, the Fourth Circuit recognized that it is "proper, within bounds, to hold clients to some measure of responsibility both for selecting competent attorneys and, more important, for supervising their conduct in representing them under ordinary principles of agency," so long as this was "done with an eye to the realities of a client's practical ability to supervise and control his attorney's litigation conduct."  Id. at 35 (internal citations omitted).

Before a case is dismissed as a sanction, often a judicial officer has given an explicit warning that such a sanction is contemplated, although it appears that no particular form of notice is required.  In Ballard v. Carlson, the magistrate judge had ordered the pro se plaintiff to particularize his complaint, and the order itself warned that failure to comply would result in a recommendation that the action be dismissed.  882 F.2d 93, 94-95 (4th Cir. 1989).  The plaintiff missed the deadline.  After the defendants moved for dismissal, the plaintiff moved for an

30

extra 30 days to comply.  The magistrate judge recommended
dismissal and the district court dismissed, finding that the
plaintiff's excuses for missing the deadline were without merit.
The Fourth Circuit affirmed, noting the magistrate judge's
written warning as a "critical fact."  Id. at 95.  The Fourth
Circuit reasoned that after such a warning, the court had little
choice but to dismiss the case when the plaintiff failed to
comply, or it would have put the court's credibility in doubt.
Id. at 96.  While a warning is useful, this case does not make
an explicit written warning a requirement.  Rather, the concern
should be whether the parties share fault or have adequate
notice.

    In determining whether a sanction of dismissal is
appropriate, the Fourth Circuit has set out four factors that
courts should consider:

> (1) the degree of personal responsibility of the plaintiff;
> (2) the amount of prejudice caused the defendant;
> (3) the existence of a drawn out history of deliberately
>     proceeding in a dilatory fashion; and
> (4) the existence of sanctions less drastic than dismissal.

Doyle, 938 F.2d at 34 (internal quotations omitted).  This is not
a rigid test, and the court should consider the circumstances of
each case.  Ballard, 882 F.2d at 95.

    In recommending dismissal of Gardendance's complaint,
Magistrate Judge Dixon made several observations.  First, he
found that the Gardendance Parties had been "obstreperous" in

dealing with Woodstock and had "ignored their obligations to this court." (Order & Recommendation U.S. Magistrate Judge of July 11, 2005 at 7.) He cited their failure to respond to correspondence from Woodstock, to appear for depositions (twice), and to respond to motions. Some of the responses they did make were late. (<u>Id.</u>) Next, Magistrate Judge Dixon pointed out that even in early July, the Gardendance Parties still had not complied with his discovery order of March 8, and the two motions they filed failed to address their underlying conduct. (<u>Id.</u>) They also "flaunt[ed] their refusal to timely comply with the order" by failing to seek a stay of the deadline. (<u>Id.</u> 7-8.) Third, after getting an order from the court allowing extra time to file an amended complaint, they filed the amended complaint late. (<u>Id.</u> at 8.) Lastly, Gardendance failed to respond on time to the motions to dismiss their amended complaint. Their motion for an extension of time to respond was filed out of time, partly because another attorney had been engaged to assist in the case, but no other attorney had entered an appearance. (<u>Id.</u>) Magistrate Judge Dixon stated that these observations excluded the Gardendance Parties' earlier discovery violations that had led to the March 8 order. (<u>Id.</u>)

Magistrate Judge Dixon noted that a sanction of contempt had been requested, but that sanction would relate only to the failure to comply with his March 8 order. Gardendance's conduct,

however, had been much more egregious. He characterized their dealings with opposing counsel as "derelict" and found they had largely ignored their obligations to the court, wasting the time and resources of both. (<u>Id.</u>) Magistrate Judge Dixon observed that no warning had been issued, but in considering the Fourth Circuit's four-factor test, recommended that dismissal was the only appropriate resolution. Citing the need for a statement of deterrence, he wrote, that "[a]ny less drastic sanction than a dismissal here will be seen as leaving the door to slovenliness ajar not only to these Gardendance [P]arties, but also to others who look upon their conduct." (<u>Id.</u> at 10.)

This court agrees with Magistrate Judge Dixon's observations and adds a few of its own. What may have begun as a typical garden party lawsuit has devolved into a bacchanalia of discord and irresponsibility. First, the parties to this litigation surely can claim no innocence or ignorance during the course of this litigation. By the time the parties failed to appear for their second round of depositions in March, they had already been ordered liable for sanctions for failure to answer interrogatories and turn over documents. Even after they were sanctioned for the second time for failure to appear at the first round of depositions, they still had not turned over that discovery. These sanctions were directed against the <u>parties</u>, not the attorneys. By this point, the parties should have been

33

well aware that the obligations imposed on them in discovery are serious matters. It must also be mentioned that Woodstock's Motion for Civil Contempt was the _fourth time_ Woodstock was forced to file a motion concerning the Gardendance Parties' discovery violations. This pattern of conduct had been ongoing for months, and it is very difficult for this court to believe that the parties were ignorant of these matters. For most of the discovery and pretrial phases of this litigation, the Gardendance Parties have proceeded in a manner so dilatory and mulish, the court cannot find it to be other than deliberate.

Next, the court attempted to have a hearing on the dismissal, a matter that should have been of some import to all of the Gardendance Parties. All the Gardendance Parties had other unrelated matters to attend to besides the prosecution of their case. In particular, Mr. Joseph's statements in his Motion for Continuance appear to have been calculated to make this court believe he had a conflict with another court's schedule _on July 22, the date of the hearing in Greensboro_. The court's own investigation revealed that he had no such court conflict. The court finds this to be a flagrant act of bad faith on his part.

As this case now stands, it would be exceedingly difficult to find a suitable resolution with a sanction of anything less than dismissal. Monetary sanctions have been ordered multiple times, but have done little to effect change. It would be

34

difficult to close off avenues of evidence or force Gardendance to take certain factual matters as true, because foreclosing discovery would likely prejudice Woodstock's counterclaims and defenses as much as it would Plaintiff's case. In any case, it may be of little use to keep the case alive by limiting sanctions only to discovery issues. Even if the court were to apply its most liberal interpretation of the time requirements and allow the filing of various stricken pleadings, there still remain two motions to dismiss and a summary judgment motion. In the least, it would appear Plaintiff has not gathered much evidence to support going to trial on the merits of its claims.

Finally and briefly, the court must look outside the case before it in this instance. It is unable to gloss over the show cause hearing that took place in Mr. Joseph's case of <u>Carpad, Inc. v. Brookstone, Inc.</u> in the District of Nevada, discussed above. Over $10,000 in sanctions has been awarded in that case against both Mr. Joseph's firm and his clients. The court also notes that Mr. Joseph represents Gardendance and Donley in the California case discussed above and has represented Gardendance in previous cases in the Middle District of North Carolina. In this court, Gardendance and Donley, represented by Mr. Joseph, brought the case of <u>Gardendance v. Alsto's, Inc.</u>, in which Magistrate Judge Dixon issued an order that explicitly discussed the possibility of sanctions against plaintiffs Gardendance and

35

Donley, including the sanction of dismissal, but did not render any decision on the matter.  See No. 1:02CV00754 (M.D.N.C. Mar. 19, 2004) (order stating "the court will hold in abeyance the decision to impose sanctions on Plaintiffs, but the sanction of dismissal is not permitted at this stage").)  This manner of conducting litigation looks to be a consistent pattern for both Gardenance and its counsel.

**III.  CONCLUSION**

For the reasons set forth herein, the court will affirm the orders contained in Order & Recommendation of United States Magistrate Judge [109].  Further, the court will accept the recommendations contained therein that the court grant the motions to dismiss [80, 83], grant Woodstock Copperworks, Ltd.'s Motion for Sanctions [70] and grant Woodstock Copperworks, Ltd.'s Motion for Civil Contempt [77].  Rather than impose the sanction of contempt, however, the court will dismiss the action with prejudice.  An order and judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

This the 18th day of August 2005.

_____
United States District Judge